UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NOELLE FARRY, as Administratrix of the Estate of Jason Swift, and as Parent and Next Friend of Matthew Swift, a minor : : : : v.  : CITY OF PAWTUCKET, by and through : its Finance Director Ronald L. Wunschel; : WALLACE H. MARTIN, individually and : in his representative capacity; ANTHONY : M. LUCCHETTI, individually and in his : representative capacity; DAVID F. DOLAN, : individually and in his representative capacity;: DAVID H. KELLY, individually and in his : representative capacity; and JOHN and JANE : DOES, 1 through 10, individually and in : their representative capacities : | C.A. No. 08-325S |

**MEMORANDUM AND ORDER**

Pending before the Court for determination is the Rhode Island State Police's Objection to and Motion to Quash a third-party document subpoena served upon it by Plaintiff in this action. (Document No. 10). A hearing was held on March 9, 2009. The parties have resolved most of their disputes, and the Court entered an Order by agreement on March 19, 2009 providing for the production of several documents – some with redactions. A dispute remains, however, as to the production of Rhode Island State Police General Order 52F ("GO-52F") entitled "Handling of Persons Intoxicated or Incapacitated by Alcohol or Drug Use; or Suffering from Mental Illness."

**Background**

This is an action brought under 42 U.S.C. § 1983 against four Pawtucket Police Officers alleging constitutional violations arising out of the shooting death of Plaintiff's decedent.

Plaintiff also asserts state law causes of action against the officers and brings both state and federal supervisory liability claims against the City of Pawtucket. In particular, Plaintiff alleges that the City failed to adequately train its police officers "to properly assist emotionally disturbed persons, and in the specific problems involved in dealing with emotionally disturbed people and taking them into custody." (Document No. 1 at ¶ 30).

**Discussion**

The Court now considers the State Police's claim that GO-52F is protected from discovery by the law enforcement privilege. Federal case law recognizes "a privilege for 'documents that would tend to reveal law enforcement investigative techniques or sources....'" Ass'n for Reduction of Violence v. Hall, 734 F.2d 63, 65-66 (1st Cir. 1984) (quoting Black v. Sheraton Corp. of Am., 564 F.2d 531, 545 (D.C. Cir. 1977)). The privilege is qualified and not absolute. Id. at 66. In ruling upon a claim of law enforcement privilege, a trial court is required to balance conflicting interests on a case-by-case basis. Id. "When particular documents have been determined to be covered by a qualified privilege, a party seeking discovery of those documents must make a threshold showing of need, amounting to more than 'mere speculation.'" Id. (quoting Socialist Workers Party v. Attorney Gen., 565 F.2d 19, 23 (2nd Cir. 1977)). The State Police submitted GO-52F to the Court for in camera review. See Hall, 734 F.3d at 66 (stating that an in camera review "is a relatively costless and eminently worthwhile method to insure that the balance between [one party's] claims of irrelevance and privilege and [the other's] asserted need for the documents is correctly struck") (quoting Kerr v. United States Dist. Ct., 426 U.S. 394, 405, 96 S. Ct. 2119, 2125, 48 L. Ed. 2d 725 (1977)) (alterations in original).

The State Police asserts that "[t]he dissemination of [GO-52F] would reveal law enforcement techniques and could affect a trooper doing his [or her] job." (Document No. 12 at p. 12). In Morrissey v. City of New York, 171 F.R.D. 85 (S.D.N.Y. 1997), a case cited by the State Police, the court found that information relating to the means by which a recording device was attached to informants was protected by the law enforcement privilege. Morrissey, 171 F.R.D. at 91. In making this finding, the Morrissey court noted that the plaintiff's need for the information was "virtually nonexistent," id., as it had "almost nothing to do with his case," id., and that the defendants had "demonstrated that this information, were it publicly available, would seriously compromise future law enforcement investigations," id.

In this case, neither side has made a very compelling showing. Thus, in applying the balancing test required by the qualified law enforcement privilege, the Court is tasked to essentially attempt to balance two feathers.

First, as to Plaintiff, it has made no showing that GO-52F has any direct relevance to the claims made in this case. The State Police has, by Affidavit, indicated that it does not train municipal police departments on GO-52F and does not have a practice of disseminating GO-52F to municipal police departments. More specifically, it represents that it did not train the City of Pawtucket on GO-52F. The State Police investigated the shooting death at issue in this case and has produced to Plaintiff its twenty-page report summarizing its investigation.[1] The report does not indicate that GO-52F was utilized by the State Police in reviewing the officers' actions. In fact, the report does not refer to GO-52F and only refers to the Pawtucket Police Department's

---

[1] There is a single, one-paragraph redaction consisting of a summary of confidential medical treatment records.

use of deadly force policy. Finally, the report simply summarizes the information obtained in the investigation and reaches no conclusion other than to indicate that the matter would be turned over to the Department of Attorney General for review in accordance with its protocol for the investigation of use of deadly force incidents. Plaintiff has not controverted any of these facts. Rather, Plaintiff argues that GO-52F is relevant to her claims against the City of Pawtucket "in that it provides evidence of the standard of care and constitutional requirements for such training in the State of Rhode Island." (Document No. 11 at p. 4). Plaintiff's counsel indicated that he seeks to provide GO-52F to his expert as evidence of the community standard of care. This is not a very compelling need given that the State Police is not a party to this case and there is no direct nexus between GO-52F and any aspect of this case.

Second, as to the State Police, it also makes a weak showing as to the potential adverse consequences of disclosure. By affidavit, Major Bannon confirms that GO-52F is an internal State Police document and, without providing any specifics, concludes that public disclosure "would reveal law enforcement techniques" and "could impair a trooper's ability to effectively do their job." (Document No. 12-3). At the hearing, the State Police's counsel speculated that if GO-52F were publicly disclosed "someone can use it to their advantage to manifest their own symptoms or signs [of mental illness] that would mimic" what is in the policy and allow the person to "predict the trooper's response." Although theoretically possible, this seems far-fetched. It seems much more likely that the individuals intended to be within the scope of this policy (i.e., persons intoxicated or incapacitated by alcohol and/or drugs or suffering from a

mental disability or mental illness) would not reasonably foresee a contact with the State Police and the application of GO-52F to the situation.

Plaintiff argues that "the State Police makes absolutely no showing whatsoever that any risk from public disclosure" of GO-52F could not be avoided by a protective order, limiting use of the documents to this proceeding." (Document No. 14 at p. 14). Plaintiff is correct. The First Circuit has instructed that "the scope of a privilege is limited by its underlying purpose" and, where possible, a court should seek to accommodate the competing interests by mechanisms such as redaction or a protective order. Hall 734 F.2d at 66. Here, even though Plaintiff has not made a strong showing of need, the State Police has also not made a very compelling showing that disclosure would impair a trooper's ability to safely and effectively perform his or her duties. More importantly, the State Police also has failed to show that its interests could not be accommodated by redaction and/or a protective order.

**Conclusion**

For the foregoing reasons, the State Police's Objection and Motion to Quash Plaintiff's Subpoenas (Document No. 10) is Overruled and DENIED as it relates to GO-52F. However, prior to production, the State Police may redact those portions dealing exclusively with Alcohol and Drug Intoxication or Incapacity and, further, the production of GO-52F is conditioned on the entry of an appropriate Protective Order restricting disclosure of GO-52F to Plaintiff's counsel and her expert(s) in this case, and to Defendants' counsel and their expert(s). The parties shall promptly confer and jointly propose a Protective Order for entry by the Court. If the parties are unable to agree on a Protective Order within fourteen (14) days, the State Police may move

for the entry of a Protective Order and the Court will review the competing versions and enter an appropriate Protective Order.  The State Police shall promptly produce GO-52F to Plaintiff's counsel and Defendants' counsel after the Protective Order is entered by the Court.


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
March 24, 2009