UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NOELLE FARRY, as Administratrix of the | : | |
| Estate of Jason Swift, and as Parent and | : | |
| Next Friend of Matthew Swift, a minor | : | |
| | : | |
| v. | : | C.A. No. 08-325S |
| | : | |
| CITY OF PAWTUCKET, by and through | : | |
| its Finance Director Ronald L. Wunschel; | : | |
| WALLACE H. MARTIN, individually and in his | : | |
| representative capacity; ANTHONY M. | : | |
| LUCCHETTI, individually and in his | : | |
| representative capacity; DAVID F. DOLAN, | : | |
| individually and in his representative capacity; | : | |
| EDWARD WARDYGA, individually and in | : | |
| his representative capacity; Michael Newman, | : | |
| individually and in his representative capacity | : | |
| and JOHN and JANE DOES, 1 though 10, | : | |
| individually and in their representative capacities | : | |


DEFENDANTS', CITY OF PAWTUCKET, ANTHONY M. LUCCHETTI, DAVID F.
DOLAN, MICHAEL NEWMAN AND EDWARD WARDYGA, MOTION FOR
SUMMARY JUDGMENT


NOW COME Defendants, City of Pawtucket, by and through its Finance Director

Ronald L. Wunschel, Anthony M. Lucchetti, David F. Dolan, Michael Newman and

Edward Wardyga, and hereby move for the entry of summary judgment.  In support

thereof, defendants rely upon the Memorandum of Law and Statement of Undisputed

Facts, attached and incorporated herein.

Defendants,
By their attorney,


/s/ Marc DeSisto
Marc DeSisto        (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax:    (401) 272-9937
Email: marc@desistolaw.com

## CERTIFICATION OF SERVICE

I hereby certify that the within document has been electronically filed with the

Court on October 15, 2009 and is available for viewing and downloading from the ECF

system and that counsel of record listed below will receive notice via the ECF system.

Max Wistow, Esq. #0330
mw@wistbar.com

Stephen P. Sheehan, Esq. #4030
sps@wistbar.com


 /s/ Marc Desisto

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NOELLE FARRY, as Administratrix of the | : | |
| Estate of Jason Swift, and as Parent and | : | |
| Next Friend of Matthew Swift, a minor | : | |
| | : | |
| v. | : | C.A. No. 08-325S |
| | : | |
| CITY OF PAWTUCKET, by and through | : | |
| its Finance Director Ronald L. Wunschel; | : | |
| WALLACE H. MARTIN, individually and in his | : | |
| representative capacity; ANTHONY M. | : | |
| LUCCHETTI, individually and in his | : | |
| representative capacity; DAVID F. DOLAN, | : | |
| individually and in his representative capacity; | : | |
| EDWARD WARDYGA, individually and in : | | |
| his representative capacity; Michael Newman, | : | |
| individually and in his representative capacity | : | |
| and JOHN and JANE DOES, 1 though 10, | : | |
| individually and in their representative capacities | : | |

DEFENDANTS', CITY OF PAWTUCKET, ANTHONY M. LUCCHETTI, DAVID F.
DOLAN, MICHAEL NEWMAN AND EDWARD WARDYGA, MEMORANDUM OF
LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Defendants, City of Pawtucket, Anthony M. Lucchetti, David F. Dolan, Michael

Newman and Edward Wardyga, (hereinafter "defendants") hereby move for the entry of

summary judgment.  The instant action raises a § 1983 claim as well as state law assault

and battery and wrongful death claims emanating from the shooting death of plaintiff

decedent, Jason Swift.  The instant defendants submit that as a matter of law the

undisputed facts do not support a finding that their actions either deprived plaintiff

decedent of his constitutional rights or caused his wrongful death.  As such, summary

judgment on all counts in favor of the instant defendants should enter.

## BACKGROUND FACTS

On February 12, 2008, Betty Swift, the mother of decedent Jason Swift, called the Pawtucket Police Department through 911. She expressed concern about her son, who had been "talking crazy." *Plaintiff's Complaint, at ¶ 13.* Dispatcher Edward Wardyga dispatched Officer Wallace Martin and Officer Anthony Lucchetti to 71 Lupine Street, Pawtucket, RI, at approximately 7:35 A.M. *Dispatch Log, at 13.*

Officers Martin and Lucchetti arrived at the address approximately three minutes later, at approximately 7:38 A.M. *Id.* After speaking with plaintiff decedent's mother, the officers approached the apartment building to find Mr. Swift, who was approximately six (6) feet, five (5) inches tall, and two hundred and eighty (280) pounds, exiting the building. *Deposition of Anthony M. Lucchetti (May 18, 2009)* at 52 & 55. Mr. Swift was holding a large, sheathed, Samurai sword. *Id.* at 55. Officers Martin and Lucchetti immediately drew their weapons and ordered Mr. Swift to drop the sword, and he complied. *Id. at 58, 59, 60 & 63.* The officer then ordered Mr. Swift to get to the ground however he did not comply. *Id. at 67 & 82.* He did however lift his shirt and turn around. As Officer Martin then attempted to place his hands on Mr. Swift, Mr. Swift violently swung his right hand, knocking the sunglasses off of Officer Martin's face. *Id. at 87 & 90.* The police officers then attempted, using batons and pepper spray, to restrain Mr. Swift. *Id. at 93-94.* Mr. Swift, however shook off the pepper spray and the batons. *Id.* They had absolutely no effect on him. *Id.*

Mr. Swift then walked away from the officers and went back into the apartment building. *Id. at 95.* Defendant Officer Dolan then joined Officer Martin and Officer Lucchetti at the scene and all three (3) officers pursued Mr. Swift into the apartment

2

building.  *Id. at 102 & 103*.  They heard yelling and screaming coming from a third floor

apartment.  *Id. at 105 & 106*.  Officer Martin commanded Mr. Swift to come out, but he

did not respond.  *Id. at 106-107 & 109*.  Officer Martin kicked in the door and the

officers entered the apartment.  *Id. at 109-110*.  The officers immediately encountered

Mr. Swift, who was near the door naked, with his hands up mumbling that he was "cool"

and "loved them."  *Id. at 125 & 133*.  The officers again ordered Mr. Swift to get on the

ground.  Mr. Swift initially began to comply, however, as he was moving into the prone

position, one of the officers started to take hold of his wrist to apply a handcuff and Mr.

Swift became violent, jumping up, swinging and attacking Officer Lucchetti by trying to

grab him by the throat. *Id. at 137*.  All three (3) officers used their batons in an attempt to

stop plaintiff decedent from attacking Officer Lucchetti.  *Id.*  Plaintiff decedent let go of

Officer Lucchetti and, turning his attention to Officer Martin, grabbed Officer Martin in a

bear-hug style grip.  *Id.* 147-148.  Officer Martin was only able to get out of plaintiff

decedent's grip by slipping out of his jacket.  Officer Dolan then tackled plaintiff

decedent and the group fell onto and broke the coffee table. *Id. 148*.  The officers all got

their feet and ordered plaintiff to stay on the ground.  Plaintiff decedent, however, refused

to stay on the ground and began to get up heading towards Officer Martin.  Officer

Lucchetti used his baton to again hit plaintiff decedent and try to stop him but he lunged

for Officer Martin.  Officer Martin continued to scream at Mr. Swift to stop, but Mr.

Swift kept coming at Officer Martin who then, in fear of his life, fired his gun hitting Mr.

Swift in the chest.  *Id. at 158*.  Mr. Swift stopped briefly after getting hit by the bullet,

but, then he lunged again at Officer Martin.  *Deposition of David F. Dolan (May 20,*

*2009), at 173*. Officer Martin fired a second shot that stopped Mr. Swift.  *Id.*  The officers

then immediately called for a rescue at approximately 7:44 A.M.  *Dispatch Log, at 15.*

Jason Swift died at the scene.

The entire incident from the time Officers Martin and Lucchetti arrived on the

scene until plaintiff decedent was shot took approximately six (6) minutes.  *Dispatch*

*Log, at 13 & 15*

## ARGUMENT

I.    **SUMMARY JUDGMENT SHOULD ENTER IN FAVOR OF THE CITY ON PLAINTIFF'S §**
      **1983 CLAIM FOR FAILURE TO TRAIN**

In Count IV, plaintiff seek to recover against the City of Pawtucket pursuant to *42*

*U.S.C. § 1983* based on the allegation that the City "developed and maintained policies or

customs exhibiting deliberate indifference to the constitutional rights of plaintiff."

*Plaintiff's Second Amended Complaint, at ¶ 37.*  In their "Statement of Claims"

submitted to the Court, Plaintiff specifically alleges that the City failed "to properly train

its police officers . . . concerning the use of force against an emotionally disturbed

individual."  *Plaintiff's Statement of Claims, Doc. #5.*[1]  However, the undisputed

evidence reveals that the City provided training to its officers both through the Municipal

Police Academy and by the Department training officers.  Defendants thus submit that as

a matter of law, the undisputed facts do not support a finding that the City engaged in a

policy of deliberate indifference in its training program and thus summary judgment in

favor of the City should enter.

---

[1] On October 15, 2009, plaintiff submitted an expert report which also challenges the City's supervision of
Officer Martin and its alleged failure to discipline him for his abuse of sick time and for the instant
shooting.  Because these allegations are not in plaintiff's Second Amended Complaint or Plaintiff's
"Statement of Claims", they are not addressed herein.  To the extent plaintiff relies upon such additional
basis in support of its constitutional claim against the City, the City reserves the right to supplement the
within Motion.

Of course, the City cannot be held liable under *§ 1983* based on a theory of *respondeat superior*. *Monell v. Department of Social Services of City of New York, 436 U.S. 690, 694 (1978)*. Rather, in order to maintain a *§ 1983* action against a municipality, plaintiffs must establish that a "policy or custom" of the municipality caused a constitutional tort. *Id.* Courts have generally recognized four grounds for demonstrating such a municipal policy or custom caused a constitutional injury.[2] One such ground, which is noted as overlapping with the other three, is premised upon the theory that the municipality's failure to train caused the constitutional injury. *City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). See also Britton v. Maloney, 901 F.Supp. 444, 450 (D.Mass. 1995) rev'd in part on other grounds, Britton v. Maloney, 196 F.3d 24 (1st Cir. 1999)*. The alleged violation of a plaintiff's constitutional rights caused by a local government's failure to train police officers is actionable under a *§1983*, Fourth Amendment claim only where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact" and where "the identified deficiency in a city's training program [is] closely related to the ultimate injury." *Young v. City of Providence, 404 F.3d 4, 26 (1st Cir. 2005) citing City of Canton, 489 U.S. 378*.

In order for a deficient training program to amount to deliberate indifference, the training must be more than merely imperfect and it must be shown that defendant "disregarded a known or obvious risk of serious harm from its failure to develop a training program" that meets adequate standards. *Young, 404 F.3d at 27-28*. A plaintiff

---

[2] The three other grounds for establishing municipal liability are when 1) the alleged constitutional injury emanates from the enforcement of an unconstitutional ordinance, regulation or written policy; 2) an unwritten or informal municipal policy produces the constitutional violation at issue; or 3) the constitutional injury emanates from an unconstitutional municipal custom that "is so well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet [do] nothing to end the practice." *Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989) cert. denied 493 U.S. 820 (1989). See generally Britton v. Maloney, 901 F.Supp. 444, 449-50 (D.Mass. 1995)*.

must show that the municipality had "a policy of not taking reasonable steps to train . . . employees" such that "the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably said to have been deliberately indifferent to the need." *Bordanaro*, 871 F.2d at 1159.  A finding of deliberate indifference requires also that the City disregarded a known or obvious risk of serious harm from its failure to develop a training program. *Young*, 404 F.3d at 28.  Deliberate indifference, requires a showing "'of more than a single instance of the lack of training or supervision causing a violation of constitutional rights.'" *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (quoting *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001)). "Rather, deliberate indifference generally requires that a plaintiff demonstrate 'at least a pattern of similar violations' arising from training that is so clearly inadequate as to be 'obviously likely to result in a constitutional violation.'" *Id.* (quoting *Thompson*, 245 F.3d at 459.) See also *Buchanan ex rel. Estate of Buchanan v. Maine*, 417 F.Supp.2d 45, 63 -71 (D. Me. 2006). *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994) ("[E]vidence of "a known history of widespread abuse sufficient to alert a supervisor to ongoing violations" is one way of demonstrating the need for more or different training").

Thus, "[t]he liability criteria for 'failure to train' claims are exceptionally stringent." *Hayden v. Grayson*, 134 F.3d 449, 456 (1st Cir. 1998).  "[A] training program must be quite deficient in order for the deliberate indifference standard to be met: the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing." *Young*, 404 F.3d at 27 citing *Canton*, 489 U.S. at 391; *Grazier*

6

*v. City of Philadelphia*, 328 F.3d 120, 125 (3d Cir. 2003); *Palmquist v. Selvik*, 111 F.3d 1332, 1345 (7th Cir. 1997) (where town gave police officers some training on handling suspects exhibiting abnormal behavior, argument that even more training should have been given failed). In fact, the First Circuit has held that "an arguable weakness in police training (or supervision does) not amount to a policy of failure to train arising from deliberate indifference to citizen's constitutional rights." *Burns v. Loranger*, 907 F.2d 233, 239 (1st Cir. 1990), See also *Rodriques v. Furtado*, et al., 950 F.2d 805, 813 (1st Cir. 1991). Also, the fact that "a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390-91 (citations omitted) citing *Springfield v. Kibbe*, 480 U.S., at 268 (O'Connor, J., dissenting); *Oklahoma City v. Tuttle*, supra, at 821 (opinion of Rehnquist, J.).

In the instant case, the undisputed facts do not support a finding that the City was deliberately indifferent in the training of its officers in how to deal with emotionally disturbed individuals. First and foremost, it is undisputed that the officers all received training in this area. This training was first provided during the officers' Municipal Police Academy before becoming full time officers. According to Capt. Ricciarelli, the Assistant Director of Operations, for the R.I. Municipal Police Academy, training on how to deal with emotionally disturbed individuals is intertwined with virtually all areas of the Academy training including most specifically community policing, stress management, patrol and the end of the session role playing activity. *Deposition of David A. Ricciarelli* (August 24, 2009) at 17-21, 26-27, 68, 71-72, 73. Major Bruce E Moreau, who had been in charge of the Planning and Training Division of the Pawtucket Police Department

during the relevant time periods, also testified that the department provides new hires with additional eighty (80) hours of initial training upon their graduation from the police academy along with an additional eight to nine weeks one-on-one training with a field training officer. *Deposition of Bruce E. Moreau, (July 21, 2009) at 10 &14.*  This additional eighty (80) hours of training included reviewing the Department's policy on handling emotionally disturbed individuals. *Id. at 15.*  In addition to a line-by-line review of the Department's Rules and Regulation on handling emotional disturbed individuals, the officers were shown a video training tape addressing the issue.  In addition, a segment of the use of force training, offered as part of the Department's in-service training program offered to regular officers included dealing with emotional disturbed individuals. *Id. at 21.*  A portion of the defensive tactics in-service training also addressed controlled techniques to be used on emotionally disturbed individuals. *Id.*  The Department also has use of the Interlocal Trust's firearms training simulator (FATS) in which scenarios involving emotional disturbed individuals are presented to the officers. *Id. 21, 33 & 36.*

Defendants submit that the training outlined above, coupled with the absolute dearth of evidence to demonstrate a pattern of constitutional violation emanating from this training, defeats as a matter of law plaintiff's claim of deliberate indifference against the City.  As noted, in order to prove that the City was deliberately indifferent, plaintiff must show that the municipality had "a policy of not taking reasonable steps to train . . . employees" such that "the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably said to have been deliberately indifferent to the need."

*Bordanaro*, 871 F.2d at 1159.   *See also Young*, 404 F.3d at 27 citing *Canton*, 489 U.S. at 391 *("the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing")*.

Time and again, courts have found that training similar to that offered by the defendant is sufficient to overcome a deliberate indifference claim.  For example, in *Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. Mass. 1989), the First Circuit affirmed summary judgment in favor of the City defendants and found that the evidence relied upon by plaintiff, including the claim that the officers only received four hours of Academy training on the issue, was insufficient to create a triable issue of fact as to whether the City of Springfield had a policy of inadequately training its police officers. *Id.  See also Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996) (training program consisting of attendance at a police academy and two weeks' on-the-job training found sufficient);  Williams-El v. Johnson, 872 F.2d 224, 230 (8th Cir. 1989) (finding police academy and on-the-job training adequate for correctional officers with no prior experience); Smith v. Watkins, 159 F.3d 1137, 1139 (8th Cir. Ark. 1998) (eight weeks of police training classes while serving as an auxiliary officer, completion of the Arkansas law enforcement training academy, and more than 100 hours of police training while serving as an auxiliary officer for the State of Arkansas sufficient).*

The Seventh Circuit addressed similar claim of failure to train in *Palmquist v. Selvik, 111 F.3d 1332 (7th Cir. Ill. 1997).*  In that case defendant police officers had killed an emotionally disturbed man during a struggle to take him into custody. The estate filed a lawsuit against defendants for excessive force under *§ 1983* as well as a *§ 1983* claim for failure to train claim against the Village of Bensenville.  In support of their

claim of failure to train, the plaintiff specifically relied upon the fact that the arresting

officers could not recall the training they received in this respect and that the police

department did not provide its officers additional specific training beyond that provided

during their basic academy training in the handling of emotional disturbed individuals.

_Id._ at 1345.  The basic recruit police training in that case included a block of instruction

on handling people who act abnormally.  Similar to the training provided by the City of

Pawtucket, the Bensenville Department also provided mandatory post-academy and in-

service training which, although was not specifically directed towards abnormally

behaving individuals, did include scenarios involving abnormal behavior.  In overturning

a jury verdict in favor of plaintiff, the Seventh Circuit held that a training program could

not "be deemed deficient so easily."   _Id._  Rather, the Court held that the fact that the

Department did not have supplemental training in handling abnormally behaving persons

did not render its training deficient or give rise to a finding of deliberate indifference.[3]

The same hold true in the instant case.  Even if plaintiff can prove that additional

training would have been preferable, such a position is still insufficient to prove

"deliberate indifference" on the part of the City.  See i.e. _Id.; Calvi v. City of Rockland,_

_2006 U.S. Dist. LEXIS 15713 (D. Me. Mar. 31, 2006) (training in arresting individuals_

_with physical disabilities is part of the Maine Criminal Justice Academy's basic law-_

_enforcement program defeated plaintiff's claim against the City)._  This is even more

apparent in the face the absolute lack of evidence to support a finding that the City

endured "'a pattern of similar violations" arising from inadequate training or that the City

disregarded a known or obvious risk of serious harm from its failure to develop a training

---

[3] The Seventh Circuit also found fault in the conclusion that this alleged training program was the "moving force" or proximate cause of plaintiff's injuries.  _Palmquist, 111 F.3d at 1345_

program.  See *Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003) (quoting*

*Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir. 2001))* and *Young, 404 F.3d at*

*28.*  Not only do the officers receive training on how to handle an emotionally disturbed

individual at the Municipal Police Academy but the City followed-up on that training

with their own training which includes going line by line over their policy.  While

plaintiff may argue that more or different training was preferable, there is no support for a

finding that the City disregarded a known or obvious risk in deliberate indifference to the

citizen's constitutional rights.  *Young, 404 F.3d at 28; Burns, 907 F.2d at 239.*  For all

these reasons summary judgment in favor of the City on Count IV should enter.

## II.    FAILURE TO TRAIN - SUPERVISORY LIABILITY AGAINST "JOHN AND JANE DOES"

In Count V plaintiff seeks to bring a *§ 1983* claim against defendants, "John and

Jane Does 1-10," for failure to adequately train defendants Martin, Lucchetti, Dolan and

Newman.  Plaintiff's Complaint, at ¶ 39-41.  In Count VI, plaintiff seeks to maintain a

state law claim for failure to train the individually named defendants.  Defendants submit

in the first instance that summary judgment for the claims against the "unidentified

officers should enter in the absence of any more specific identification of these

individuals by the plaintiffs."  *Stratton v. City of Boston, 731 F.Supp. 42, 45 (D.Mass.*

*1989) ("Although the Federal Rules do not explicitly prohibit the use of fictitious names*

*of for defendants, an action may be dismissed if the defendant Is not sufficiently identified*

*to permit service of process.").* Despite the opportunity to discover the identity of all

officers involved in the incident and having filed two Amended Complaints, Plaintiff has

not sought to further identify these "John/Jane Doe" defendants.[4]  As such, their claim

---

[4] During discovery, plaintiff conducted twenty-five (25) depositions and propounded approximately two sets of  Interrogatories to the City along with six (6) Requests for Production of Documents.  These

against these unnamed individuals should be dismissed. *Williams v. Rodriguez, 509 F.3d 392, 402 (7th Cir. 2007).  See also Colon v. Ludemann, 283 F.Supp. 2d 747, 762 (D. Conn. 2003).*

Defendants further submit that even if plaintiff had properly identified these individual supervisors, summary judgment on Count V should nevertheless enter on their behalf for the same reason that plaintiff's claim of failure to train against the City fails. More specifically, like a *§ 1983* claim against the municipality for failure to train, in order to succeed on a *§ 1983* claim against a superior for failure to train, plaintiff must demonstrate that "a responsible official supervises, trains, or hires a subordinate with <u>deliberate indifference</u> toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." *Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999) (emphasis added).*  In addition, "there must be an 'affirmative link' between the street level misconduct and the action or inaction of supervisory officials." *Gutierrez Rodriguez, 882 F.2d at 563.*  In the instant case, even if plaintiff had identified supervisory officers, there is absolutely no evidence to support a finding of deliberate indifference on the part of supervisor personnel.  Consequently, summary judgment on Count VI should also enter in favor of defendants.

### III.    SUMMARY JUDGMENT SHOULD ENTER IN FAVOR OF LT. NEWMAN ON COUNTS I AND III.

Plaintiff also brings a wrongful death action and § 1983 claim against Lt. Newman.  *Plaintiff's Complaint, Counts I and III.*  It is undisputed that Lt. Newman was the officer in charge on February 12, 2008, at the time the call came in for assistance. There is also no dispute that Lt. Newman had no direct contact with plaintiff decedent.

Interrogatories and Request for Production requests served on the City were in addition to those served on the individual defendants.

Rather, plaintiff rests his claims against Lt. Newman on his supervisory duties. Plaintiff specifically alleges that, in violation of the Department Rules and Regulations, Lt. Newman failed to send a supervisor to the scene upon receiving the call for an emotionally disturbed individual.[5] *Plaintiff's Complaint, at ¶ 17.* Plaintiff concludes that this omission resulted in the deprivation of plaintiff's constitutional rights and in the wrongful death of plaintiff, giving rise to liability under *§ 1983* and R.I.'s Wrongful Death statute, *R.I.G.L § 10-7-1 et seq. See Complaint, ¶ 17, 28 and 34.* Defendant submits that summary judgment should enter as a matter of law on both counts. Not only do the undisputed facts fail to support a finding that Lt. Newman violated plaintiff's constitutional rights but there nevertheless is absolutely no causal connection between his alleged failure to send a supervisor and plaintiff's injuries.

Under Count I, plaintiff seeks to maintain a § 1983 claim against Lt. Newman for his alleged violation of plaintiff's constitutional rights. Under § 1983, supervisory liability may not be based on the doctrine of respondeat superior, *see* <u>Monell</u>, *436 U.S. at 694 n.58,* but only on the supervisor's own acts or omissions. <u>Whitfield v. Melendez-Rivera</u>, *431 F.3d 1, 14 (1st Cir. P.R. 2005).* There are generally two (2) recognized means of establishing supervisory liability: either through the supervisor's direct participation in the unconstitutional conduct, or "where (1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or

---

[5] It is noteworthy that Lt. Newman testified that he was with Sgt. Maciel in the front office when he heard the call come in. He testified that he said something to the effect of "oops, here we go, twenty minutes of eight.." to Sgt. Maciel and then told him "you have to go on the call." *Deposition Lt. Michael Newman, (June 15, 2009) at 28, 30, 33, 35.* However, Sgt. Maciel, who testified that he was at the sergeant's desk when the call came in multi-tasking (answering the phone and reviewing a police report with another officer), does not remember this initial exchange with Lt. Newman or even becoming aware that the call was for an emotionally disturbed individual. *Deposition of Sgt. Manual Maciel (June 15, 2009) at 21 & 31.* Nevertheless, for purposes of the instant motion, defendant assumes, without conceding, that Lt. Newman failed to initially send a supervisor to the scene.

inaction was 'affirmatively link[ed]' to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence [. . .] amounting to deliberate indifference.'" *Id.*

A supervisor's action or inaction amounting to deliberate indifference will be found only if "it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *Germany v. Vance, 868 F.2d 9, 18 (1st Cir. 1989).* "The affirmative link requirement contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." *Hegarty v. Somerset County, 53 F.3d 1367, 1380 (1st Cir. 1995) (internal citations and quotations omitted).* Indeed, it is very important that the Plaintiff "affirmatively connect the supervisor's conduct to the subordinate's violative act or omission." *Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994).* In addition, the First Circuit requires Plaintiff to show that the supervisor's "conduct or inaction amounted to a reckless or callous indifference to the constitutional rights of others." *Germany, 868 F.2d at 17-18.*

In this case, plaintiff relies upon Lt. Newman's alleged failure to send a supervisor to the scene immediately upon receiving the call for assistance to support their constitutional claim. Defendant submits that as a matter of law, this alleged malfeasance on the part of Lt. Newman does not give rise to a constitutional deprivation.[6] First, there is no dispute that Lt. Newman did not directly participate in the attempt to apprehend plaintiff decedent. Thus, in order to succeed on the constitutional claim against Lt.

---

[6] Of course, as more fully briefed below in support of summary judgment in favor of Dispatcher Wardyga, the fact that the failure to dispatch a supervisor violates the Department Rules and Regulations is irrelevant to the determination of whether Lt. Newman violated plaintiff's constitutional rights. Section 1983 only imposes liability for violations of rights protected by the Constitution or federal statutes, not for violations of state law. *Snowden v. Hughes, 321 U.S. 1, 11 (U.S. 1944).* Plaintiff did not enjoy a constitutional right to have a supervisor present at the scene.

Newman, plaintiff must prove that Lt. Newman's actions amounted to "'supervisory encouragement, condonation or acquiescence' or 'gross negligence [. . .] amounting to deliberate indifference'" to the officers' actions.  *Whitfield, 431 F.3d at 14.*  The fact that Lt. Newman did not immediately dispatch a supervisor to the scene, even if proven, does not even come close to proving such "encouragement, condonation, gross negligence or deliberate indifference."  In fact, applying the *Germany* standard, it simply would not "be manifest to any reasonable official that [failing to send a supervisor] was very likely to violate an individual's constitutional rights." *Germany, 868 F.2d at 18.*  Even more directly, the undisputed facts do not support a conclusion that failing to immediately send a supervisor amounted to "a reckless or callous indifference to the constitutional rights of others." *Id. at 17-18.*  To find otherwise would require the conclusion that without a supervisor's presence at the scene, it is "very likely" that a patrol officer is going to violate the constitutional rights of an emotionally disturbed individual.  There is simply nothing in either the history of the department or Lt. Newman's knowledge of the individual officer's themselves to support such a conclusion.  Thus, even if plaintiff's claim that Lt. Newman failed to send a supervisor to the scene is accepted as undisputed, such an omission does not give rise to a finding that Lt. Newman was "recklessly or callously indifferent" to the constitutional rights of plaintiff decedent.  Summary judgment on Count I should accordingly enter in favor of Lt. Newman.

In addition, summary judgment in favor of Lt. Newman should enter on all counts because there is simply no causal relationship between the perceived failure of Lt. Newman to immediately dispatch a supervisor to the scene and plaintiff's injuries.  In order to succeed on his § 1983 claim against Lt. Newman, plaintiff must "affirmatively

connect the supervisor's conduct to the subordinate's violative act or omission."

*Maldonado Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994).*  To establish causation, a plaintiff must adduce "an affirmative link . . . [a] moving force that animated the behavior . . . that resulted in the constitutional violations alleged." *Deaton v. Montgomery County, 989 F.2d 885, 889 (6th Cir. 1993).*  When the theory of causation is a matter of pure speculation and is nothing more than an hypothetical argument, the pleadings are insufficient to sustain a compensable § 1983 claim. *Horn, 22 F.3d at 659.*

Likewise, in order to succeed on the state law wrongful death claim against Lt. Newman, plaintiff will have to establish a causal link between Lt. Newman's alleged negligent act and plaintiff's death.  Under R.I. law, causation is established by competent proof that but for the negligence of defendant, harm to plaintiff would not have occurred. *Mullaney v. Goldman, 398 A.2d 1133, 1136 (R.I. 1979).*  Stated another way, the negligent act must have played a substantial part in bringing about or actually causing the injury alleged by plaintiffs.  A party, even a negligent party, will not be held liable for an injury if the negligent act or omission did not play a substantial part or actually caused the injury complained of.  The injury must be either a direct result of the negligent act or a reasonably probable or natural consequence of the act.  Plaintiff, however, cannot rely upon conjecture or speculation to establish such causal connection.  Rather, plaintiff must provide competent proof of the connection between the negligent actions and the injury received.  *Evans v. Liguori, 374 A.2d 774, 777 (R.I. 1977).*

In the instant case, plaintiff relies upon pure speculation to support a causal connection between Lt. Newman's alleged inaction and plaintiff's injuries.  As noted, it is undisputed that the entire incident with plaintiff, from the time the officers arrived on the

scene until the shooting, took approximately six (6) minutes.  *Dispatch Log, at 13 & 15.*
It is of course pure speculation that a supervisor would have arrived on the scene in
sufficient time to prevent the escalation of the encounter with plaintiff decedent to the
extent that the officers felt deadly force was necessary.  In the end, it is pure speculation
to conclude that the supervisor on the scene would have done anything differently than
the officers who were present.  More specifically, it is undisputed that the officers all
initially used non-deadly force in their attempt to take plaintiff decedent into custody.  It
is also undisputed that when the officers made this attempt they were unsuccessful and
plaintiff decedent reacted violently.  It is pure speculation to conclude that Lt. Newman's
alleged failure to dispatch a supervisor to the scene immediately would have prevented
any of these actions.

Dropped to its most elementary form, there is absolute no support for the
conclusion that the lack of supervisor on the scene caused Officer Martin to shoot
plaintiff decedent. Absent a causal connection between plaintiff's claimed injuries and Lt.
Newman's alleged failure to dispatch a supervisor, summary judgment on Count I and III
should enter in his favor.

## IV.   SUMMARY JUDGMENT SHOULD ENTER IN FAVOR OF DISPATCHER WARDYGA

In addition to seeking to recover against the individual officers who had direct
contact with plaintiff decedent and their supervisor, plaintiff also bring suit against
dispatcher Edward Wardyga.  Plaintiff specifically alleges in the Second Amended
Complaint that Dispatcher Wardyga violated the Department Rules and Regulations by
failing to dispatch a supervisor to the scene upon receiving the call from decedent's
mother describing plaintiff decedent as being "out of his mind" and "talking crazy."

*Plaintiff's Complaint, ¶ 15.*   Plaintiff alleges that the defendant's failure to follow the Rules and Regulations and send a supervisor to the scene was not only negligent leading to his wrongful death but also violated plaintiff decedent's constitutional rights.

*Plaintiff's Complaint, Cts. I and III.*   Defendants submit that summary judgment in favor of Dispatcher Wardyga should enter because his actions, as a matter of law, do not amount to a violation of plaintiff's constitutional rights.   Moreover, summary judgment in favor of Dispatcher Wardyga should enter because, even if he failed to follow the Department's Rules and Regulations, there is no causal connection between his inaction and plaintiff decedent's injuries.

> A.   Failure To Follow Rules And Regulations Do Not Amount To A Violation Of Constitutional Right

It is undisputed that Dispatcher Wardyga did not have any contact with plaintiff decedent.   Rather, Plaintiff bases the claims against Dispatcher Wardyga solely on his perceived failure to follow the Rules and Regulations and send a supervisor to the scene immediately upon receiving the call for assistance from Mrs. Swift.   Defendant submits in the first instance that this perceived violation of the Department's policies does not give rise to a constitutional violation.

Quite simply, § 1983 only imposes liability for violations of rights protected by the Constitution or federal statutes, not for violations of state law. *Snowden v. Hughes, 321 U.S. 1, 11 (U.S. 1944).  See also Ting v. United States, 927 F.2d 1504, 1511 (9th Cir. 1991)*; *Boston v. Massachusetts Port Authority, 444 F.2d 167, 169 (1st Cir. Mass. 1971); Hernandez v. Gates, 100 F. Supp. 2d 1209, 1226 (C.D. Cal. 2000) ("Since the Court finds no basis for concluding that the conduct in issue violates federal law, the fact that it might violate state law is of no consequence under Section 1983"); Ochana v. Flores,*

*199 F. Supp. 2d 817, 830 (N.D. Ill. 2002) ("Allegations that the officers violated a Police Department General Order do not support a § 1983 claim, which must be grounded on violations of [plaintiff's] federal constitutional rights").*  In the instant case, the perceived transgression by Dispatcher Wardyga was his failure to immediately dispatch a supervisor to plaintiff's residence.  Plaintiff relies solely upon the Department Rules and Regulations requiring that a supervisor respond to the scene of an emotionally disturbed individual in support of the constitutional claims against Dispatcher Wardyga.  However, while sending a supervisor may have been required by the Department's Rules and Regulations, plaintiff clearly does not have a <u>constitutional right</u> to have supervisor respond to a call for help for an emotionally disturbed individual.  Thus, although it may be viewed as a violation of the Rules and Regulations, the defendant's failure to send a supervisor, as a matter of law, does not amount to a violation of plaintiff's constitutional rights.[7]  Summary judgment in favor of Dispatcher Wardyga should accordingly enter on Count I because the undisputed facts fail to support a finding that their perceived failure to follow the department's Rules and Regulations violated plaintiff's constitutional right.

> B.  *There is no causal connection between Dispatcher Wardyga's actions and plaintiff's injuries*

Defendants further submit that even if plaintiff could identify a constitutional right to having a supervisor dispatched to the scene, there is absolutely no causal connection between the failure to dispatch the supervisor and plaintiff's injuries.  Absent a causal connection, summary judgment on plaintiff's § 1983 claim against Dispatcher

---

[7] In addition, the federal constitutional right cited by plaintiff is the Fourth Amendment right to be free from unlawful seizure. The undisputed facts utterly fail to support a finding that Dispatcher Wardyga unlawfully "seized" plaintiff depriving him of his constitutional rights.  The fact that the Department Rules and Regulations dictated a policy that the named defendants (allegedly) failed to follow does not result in a finding that the individual infringed upon plaintiff's constitutional right to be free from unlawful seizure.

Wardyga should enter (Count I).  The lack of causal connection also warrants the entry of summary judgment on plaintiff's state law wrongful death claim against Dispatcher Wardyga (Count III).

Although a *§ 1983* claims have been described as "a species of tort liability," "not every injury in which a state official has played some part is actionable under that statute." *Martinez v. Cal.*, 444 U.S. 277, 285 (U.S. 1980) quoting *Imbler v. Pachtman*, *424 U.S. 409, 417 (1976).*  Rather, in order to succeed on a § 1983 claim plaintiff must show a causal connection between the named defendant's actions and the alleged constitutional deprivation.  *Francis v. Barlow*, *2006 U.S. Dist. LEXIS 30394 (W.D. Ky. May 16, 2006) citing  King v. Massarweh, 782 F.2d 825, 829 (9th Cir. 1986).* "That is, a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury." *Horn by Parks v. Madison County Fiscal Court*, *22 F.3d 653, 659 (6th Cir. Ky. 1994).*  "Congress did not intend § 1983 liability to attach where causation is absent." *Deaton v. Montgomery County*, *989 F.2d 885, 889 (6th Cir. 1993).* To establish causation, a plaintiff must adduce "an affirmative link . . . [a] moving force that animated the behavior . . . that resulted in the constitutional violations alleged." *Id.*  When the theory of causation is a matter of pure speculation and is nothing more than an hypothetical argument, the pleadings are insufficient to sustain a compensable § 1983 claim. *Horn, 22 F.3d at 659.*

In order to succeed pursuant to R.I. Wrongful Death statute, plaintiff must also establish that Dispatcher Wardyga's action were the actual and proximate cause of plaintiff's injuries.  *Mullaney, 398 A.2d at 1136; Welsh Mfg., Div. of Textron v. Pinkerton's Inc., 474 A.2d 436, 440 (R.I. 1984).*  In the instant case, for all the same

reasons that there is no causal connection between Lt. Newman's alleged inaction and plaintiff's injuries, there is likewise simply no causal link (actual or proximate) between Dispatcher Wardyga's failure to send a supervisory and plaintiff's alleged constitutional injury or his alleged wrongful death.  Summary judgment on Counts I and III should thus enter in favor of Dispatcher Wardyga.

## V.    DEFENDANTS NEWMAN AND WARDYGA ARE NEVERTHELESS ENTITLED TO QUALIFIED IMMUNITY

Defendants Newman and Wardyga further submit that they are nevertheless qualified immune from plaintiff's constitutional and state law claims. *Hatch v. Middletown*, 311 F.3d 83 (1st Cir. 2002) (confirming the application of qualified immunity to Rhode Island state law claims).  It is well-settled that "[q]ualified immunity may exist even though in hindsight a court might determine that the action of the official violated the constitution." *Berthiaume v. Caron*, 142 F.3d 12, 15 (1st Cir. 1998) citing *Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982); *Hatch v. Town of Middletown*, 311 F.3d 83, 90 (1st Cir. 2002) citing *Pontbriand v. Sundlun*, 699 A.2d 856, 867 (R.I. 1997) and *Ensey v. Culhane,* 727 A.2d 687, 690 (R.I. 1999) (applying qualified immunity to state law claims ).   Thus, even if it should ultimately be determined that decedent's constitutional right has been violated, the defendants are relieved from liability by the doctrine of qualified immunity.

The doctrine of qualified immunity emanates from the Supreme Court's pronouncements in *Harlow* where the Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow, 457 U.S. at 818.*  The purpose

behind granting officials such immunity is to allow them to perform their duties and act in areas where clearly established rights are not implicated "with independence and without fear of consequence." _Id. at 819_.  Officials, therefore, enjoy "an immunity from suit rather than a mere defense to liability [which] . . . is effectively lost if a case is erroneously permitted to go to trial." _Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)_.  "In the end, the qualified immunity defense should prevail unless the unlawfulness of the challenged conduct was "apparent" when undertaken." _Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004)_.

The First Circuit has prescribed the following "three-step algorithm" for determining if a party is entitled to qualified immunity:

> [C]onsider (i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right.  _Id._

The third step involves applying a good faith test that allows questions of qualified immunity to be decided as a matter of law in appropriate cases. _Malachowski v. City of Keene, 787 F.2d 704, 714 (1st Cir. 1986)_.  This test requires viewing the official's actions from an objectively reasonable standpoint.  The decisive question becomes whether another police officer, standing in the shoes of these defendants, would have concluded that their actions violated a clearly established statutory or constitutional right. _See Ricci v. Urso, 974 F.2d 5, 7 (1st Cir. 1992)_.  A "reasonable, although mistaken, conclusion about the lawfulness of one's conduct does not subject a government official to personal liability." _Cookish v. Powell, 945 F.2d 441, 443 (1st Cir. 1991)_.   The First Circuit has observed that the "qualified immunity standard 'gives ample room for

mistaken judgments' by protecting' all but the plainly incompetent or those who knowingly violate the law.'" _Rivera v. Murphy_, 979 F.2d 259, 263 (1st Cir. 1992) quoting _Hunter v. Bryant_, 502 U.S. 224, 229 (1991).

In the instant case, qualified immunity is appropriate in the first instance because there is no clearly established right to have a supervisor dispatched to an incident involving an emotionally disturbed individual.  As noted, plaintiff's claim against Lt. Newman and Dispatcher Wardyga is premised solely on their alleged failure to send a supervisor to the scene immediately upon  receiving the call for assistance. _Plaintiff's Complaint, at ¶ 15 & 17._  Plaintiff can not cite to any legal support demonstrating even an arguable constitutional right.  In any event, even assuming that their actions deprived plaintiff of his constitutional rights and/or caused his injuries, it cannot be found as a matter of law, that another individual standing in these defendants' shoes would believe that the failure to immediately send a supervisor to scene would amount to such a constitutional violation.  As noted, in order to reach such a finding, it would have to be assumed that a patrol officer would violate an individual rights unless a supervisor was on the scene.  There is simply no basis for such an assumption or finding.  Thus, it cannot be said that another officer, standing in the shoes of this officer and dispatcher would view their failure to send a supervisor violated plaintiff's clearly established rights.  As such, Lt. Newman and Dispatcher Wardyga are entitled to qualified immunity from the instant suit.

## VI.   SUMMARY JUDGMENT IN FAVOR OF OFFICERS LUCCHETTI AND DOLAN SHOULD ENTER

Plaintiff has also brought suit against Officers Lucchetti and Dolan seeking to hold these officers liable for alleged deprivation of plaintiff's constitutional right as well

as his alleged wrongful death.  Defendants submit that the undisputed facts warrant the entry of summary judgment in favor of Officers Lucchetti and Dolan on all counts.

In the first instance, in Count II, plaintiff has alleged that Officers Lucchetti and Dolan's assaulted and battered plaintiff resulting in plaintiff becoming "grievously injured and died."  *Plaintiff's Second Amended Complaint, at ¶30-31.*   In Count III, plaintiff likewise alleges that as the result of Officers Lucchetti's and Dolan's negligent conduct, plaintiff "experienced severe pain and suffering and <u>died</u>."  *Plaintiff's Complaint, at 34.*  However, it is undisputed that plaintiff died as a direct result of two (2) gunshot wounds fired by Officer Martin.  *Autopsy Report, 6.*  Although Officers Lucchetti and Dolan were on the scene and attempted to apprehend plaintiff decedent, it is undisputed that neither Officer Lucchetti nor Officer Dolan discharged their weapon. The medical examiner specifically concluded that the injuries plaintiff decedent suffered prior to being shot were not deadly.  *Deposition of Peter Gillespie, M.D. (August 29, 2009), at 37.*  Officers Lucchetti and Dolan thus submit that as a matter of law summary judgment in favor of should accordingly enter in their favor.

Defendants also submit that summary judgment on Count I, plaintiff's § 1983 claim should also enter.  It is well-settled that a police officer's liability under *§ 1983* for a fellow officer's unconstitutional acts[8] cannot be premised upon the mere fact that the officer was present at the time of the act.  "An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3)

---

[8] Although defendants specifically deny that Officer Martin violated plaintiff's constitutional rights, for purposes of the instant motion, defendants assume, without conceding that plaintiff's constitutional rights were violated when he was shot by Officer Martin.

that any constitutional violation has been committed by a law enforcement official; and

the officer had a realistic opportunity to intervene to prevent the harm from occurring.

*Anderson v. Branen*, *17 F.3d 552, 556 (2nd Cir. 1994)*.  Thus the standard for

determining the liability of police officers who are present but do not commit the act is

whether the police officer knew that a constitutional right was being violated and failed to

prevent the use of excessive force in his presence by another police officer.  *Hathaway v.*

*Stone*, *687 F.Supp. 708, 712 (citing cases) (D.Mass.1988) (holding that a reasonable*

*officer who saw another officer drag an arrestee from a car, throw her to the ground, and*

*begin to kick her, would realize that he was under a duty to stop the assault);  accord*

*O'Neill v. Krzeminski*, *839 F.2d 9, 11 (2d Cir.1988) (citing cases);  Gross v. Bohn*, *782*

*F.Supp. 173, 179 (D.Mass.1991) (citing cases)*.  "However, an onlooker cannot be

charged with section 1983 liability for another's sudden, momentary actions."  *Noel v.*

*Town of Plymouth, Mass.,* *895 F.Supp. 346, 352 (D.Mass. 1995) citing Gaudreault v.*

*Salem*, *923 F.2d 203, 207 n. 3 (1st Cir.1990) cert. denied, 500 U.S. 956 (1991)*.  As

explained by the First Circuit, the question becomes whether the defendant officers had a

" 'realistic opportunity' to prevent an attack."  *Gaudreault*, *923 F.2d at 207 n. 3.*   Where

"the attack came quickly and was over in a matter of seconds" the officer cannot be liable

for failing to prevent the same.   *O'Neill v. Krzeminski*, *839 F.2d 9, 11-12 (2d Cir.1988)*

*("The three blows were struck in such rapid succession that [the officer standing by] had*

*no realistic opportunity to attempt to prevent them.");  Jesionowski v. Beck*, *937 F.Supp.*

*95, 104-05 (D.Mass.1996) (two quick blows to the head one right after the other did not*

*give the officer standing by time to intervene); Noel v. Town of Plymouth, Massachusetts*,

*895 F.Supp. 346, 352-53 (D.Mass.1995) (a blow to the victim's face followed by a blow*

*to the back were consistent with a "scuffle of quick duration" that the officers standing by had no realistic opportunity to intervene).*

Thus, in order to succeed on the instant claim against the individual officers, plaintiff must demonstrate that Officers Lucchetti and Dolan not only knew that plaintiff's constitutional rights were being violated by Officer Martin but also that they were in a position to prevent Officer Martin from shooting plaintiff.  The evidence in this case is undisputed that the incident leading up to the shooting happened very quickly and was over in a matter of seconds.  Officer Lucchetti and Officer Dolan specifically testified that just before the shooting, they were standing off to the side and behind plaintiff-decedent who was facing Officer Martin.  *Deposition of Anthony M. Lucchetti (May 18, 2009)* at 151-152.  *Deposition of David F. Dolan (May 20, 2009) at 169-170.* Plaintiff decedent, who had been tackled by Officer Dolan, started to get up and head towards Officer Martin in a threatening manner.  Officer Lucchetti immediately attempted to stop plaintiff decedent by not only yelling at him but by hitting his shoulder and arm that plaintiff decedent was using to push himself off the ground.  *Lucchetti Deposition, at 155.*  Plaintiff decedent, however, was unfazed by Officer Lucchetti's actions and lunged at Officer Martin.  *Id. at 158.  Dolan Deposition, at 172.*[9] Officer Martin fired his weapon hitting plaintiff decedent in the chest.

Even assuming that Officer Martin's decision to shoot amounted to a deprivation of plaintiff decedent's constitutional rights,  there is absolutely no evidence to support a finding that Officers Luchetti or Dolan had a "'realistic opportunity' to prevent" the shooting.  *Gaudreault,* 923 F.2d at 207 n. 3.  *See also Gilbert v. Baldwin,* 2007 U.S. Dist.

---

[9] All officer testified that Mr. Swift was unfazed by any of their attempts to control him including ignoring the strikes to his head with their batons and the pepperspray.

*LEXIS 83106 (E.D. Cal. Oct. 29, 2007) ("no evidence that Corporal Ray had a realistic opportunity to intervene to prevent Deputy Baldwin's firing of the second and third shots, as the time interval was short and the sequence of events continuous"); Hogan v. City of Easton, 2006 U.S. Dist. LEXIS 65628 (E.D. Pa. Sept. 12, 2006) ("There is no dispute that the use of force in this case happened in a matter of seconds, and we conclude that no reasonable juror could find that the non-shooting officers had an opportunity to intervene").* Up until the shooting, the officers had been taking every non-lethal means available to control plaintiff-decedent and take him into custody. There is no dispute that plaintiff-decedent moved very quickly, lunging towards Officer Martin. *Lucchetti Deposition, at 158; Dolan Deposition, at 172.* Officer Martin's use of force thus happened in a matter of seconds. Assuming Officer Martin violated plaintiff's constitutional rights by shooting him, there was no realistic opportunity for Officers Lucchetti or Dolan to stop this act. Consequently, lacking an opportunity to intervene, neither Officer Lucchetti nor Officer Dolan can be held liable for plaintiff decedent's claimed constitutional deprivation or his alleged wrongful death. Summary judgment should accordingly enter in favor of Officers Lucchetti and Dolan on Counts I, II and III.

**VII.  CONCLUSION**

For the reasons stated herein, as well as those that may be raised at hearing, defendants, City of Pawtucket, Anthony M. Lucchetti, David F. Dolan, Michael Newman and Edward Wardyga, respectfully move for the entry of summary judgment.

27

Defendants,
By their attorney,


/s/ Marc DeSisto
Marc DeSisto      (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax:    (401) 272-9937
Email: marc@desistolaw.com

<u>CERTIFICATION OF SERVICE</u>

I hereby certify that the within document has been electronically filed with the

Court on October 15, 2009 and is available for viewing and downloading from the ECF

system and that counsel of record listed below will receive notice via the ECF system.

Max Wistow, Esq. #0330
mw@wistbar.com

Stephen P. Sheehan, Esq. #4030
sps@wistbar.com


 /s/ Marc Desisto

28