UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NOELLE FARRY, as Administratrix of the Estate of Jason Swift, and as Parent and Next Friend of Matthew Swift, a minor | : : : : | |
| v. | : : | C.A. No. 08-325 |
| CITY OF PAWTUCKET, by and through its Finance Director Ronald L. Wunschel; WALLACE H. MARTIN, individually and in his representative capacity; ANTHONY M. LUCCHETTI, individually and in his representative capacity; DAVID F. DOLAN, individually and in his representative capacity; DAVID H. KELLY, individually and in his representative capacity; EDWARD WARDYGA, individually and in his representative capacity; MICHAEL NEWMAN, individually and in his representative capacity; and JOHN and JANE DOES, 1 though 10, individually and in their representative capacities | : : : : : : : : : : : : : : : | |

## **PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS**

1.  Betty Swift called 911 for help to obtain psychiatric hospitalization for her son. *Plaintiff's Statement of Undisputed Material Facts ("PSUMF")* ¶2. The 911 operator chose to connect her to the Pawtucket Police Department. *PSUMF* ¶2. She told the dispatcher for the Pawtucket Police Department that she did not know who to call. *PSUMF* ¶2. The dispatcher chose to send patrol officers to the scene, and reassured Betty Swift that they are trained to deal with such situations. *PSUMF* ¶3.

2.  The timing function of the Pawtucket Police Department dispatch log and the timing function of the system for recording radio transmissions were not coordinated

but rather were several minutes off, with the result that the exact timing of events is disputed.

3. See Paragraph 2, above.

4. In violation of departmental written policies and Jason Swift's constitutional rights, the officers elected to treat him as a criminal and to physically force him to the ground.  *PSUMF ¶¶14, 15.*  When that failed, they used their pepper spray and batons to attempt to do so again without success, whereupon Jason Swift retreated to his mother's apartment when he was ultimately killed.  *PSUMF ¶15.*  When he was shot to death, Jason Swift was on his knees, or otherwise not in a position to threaten the officers.  *PSUMF ¶¶27-28.*

6. See Paragraph 2, above.

8. For many years, including the period of time when Defendants Martin, Lucchetti and Dolan were trained, the Rhode Island Municipal Police Academy ("Police Academy") had no specific training on how officers should deal with emotionally disturbed individuals, having dropped that subject from the lesson plan some years earlier.  *PSUMF ¶32.*  There is no documentation whatsoever to confirm the fact that or describe the manner in which training and dealing with emotionally disturbed individuals was "intertwined" in some way in other areas of training during the period of time that Defendants Martin, Lucchetti and Dolan were trained at the Police Academy.  *PSUMF ¶32.*  The only support for that claim of "intertwining" is the general conclusion of the director of the Municipal Academy to that effect, and he has a clear bias to prove the adequacy of the Department's training.

11. The "reviewing" with respect to the Department's written policy on handling emotionally disturbed individuals consisted entirely of simply reading the written policy to recruits. *PSUMF ¶31.*

12. The video which was shown to recruits concerning police interacting with emotionally disturbed persons itself demonstrates the inadequacy of the Defendant's having had knowledge of the need for adequate training, since it acknowledged the existence and necessity for a comprehensive and extensive program in crisis intervention training which the Albuquerque Police Department offered to its regular officers to train and equip them for dealing with emotionally disturbed persons, which the Pawtucket Police Department refused and failed to provide in Pawtucket. *PSUMF ¶31.* Accordingly, the message to recruits was that there is a right way to train officers for dealing with emotionally disturbed persons, but Pawtucket did not care enough to provide such training. *PSUMF ¶31.*

13. Prior to the shooting death of Jason Swift, <u>no</u> portion of the Department's in-service training program offered to regular officers included specifically dealing with emotionally disturbed individuals. *PSUMF ¶31.* The segment of the use of force training dealing with defensive tactics included police control techniques that could and should be used on anyone, EDP or not. *PSUMF ¶31.*

14. See Paragraph 13, above.

15. Defendants have not demonstrated that any firearms training simulator exercises offered to Defendants Martin, Lucchetti or Dolan involves scenarios involving emotionally disturbed individuals, but rather have relied upon conclusory statements.

        Plaintiff, Noelle Farry,
        By her Attorneys,


        /s/Max Wistow
        Max Wistow, Esq.  #0330
        mw@wistbar.com


        /s/Stephen P. Sheehan
        Stephen P. Sheehan, Esq.  #4030
        Wistow & Barylick Incorporated
        61 Weybosset Street
        Providence, RI  02903
        (401) 831-2700
        sps@wistbar.com

Dated:  November 13, 2009

## CERTIFICATION

I hereby certify that I caused to be served by electronic means (e-mail) a copy of the within on the 13th day of November, 2009, to the following:

Marc DeSisto, Esq.
marc@desistolaw.com


        /s/Stephen P. Sheehan

4