UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NOELLE FARRY, et al,<br>    *Plaintiff,*<br>vs.<br><br>CITY OF PAWTUCKET, et al<br>    *Defendants.* | C.A. No. 08-325S |

DEFENDANTS' MOTION IN LIMINE

Defendants hereby move in limine to exclude certain testimony from trial in the above captioned matter. Defendants specifically seek an Order in Limine excluding the following evidence:

- Testimony and evidence relating to Officer Wallace Martin's personal stationery bearing a drawing of a sunglass-wearing Western-style sheriff drawing his gun with the caption "The Lawman";

- Testimony and evidence relating to Officer Martin's former personal email address: cowboycountry127@yahoo.com.

- Testimony and evidence indicating that Officer Martin described his home address as "Cowboy Country;"

- Evidence that Officer Martin allegedly lied to Pawtucket Police Department's Division of Internal Affairs during the investigation into his alleged abuse of sick leave.

Defendants further seek an order limiting the introduction of evidence regarding the investigation into Officer Martin's alleged misuse of sick leave along with his report of stress and fatigue to the Internal Affairs Division. In support thereof, defendants rely upon the Memorandum of Law, attached and incorporated herein.

          Defendants,
          By their attorney,

          */s/ Marc DeSisto*
          Marc DeSisto    (#2757)
          DESISTO LAW
          211 Angell Street
          P.O. Box 2563
          Providence, RI 02906-2563
          Phone: (401) 272-4442
          Fax:    (401) 272-9937
          Email: marc@desistolaw.com


### CERTIFICATION OF SERVICE

I hereby certify that the within document has been electronically filed with the Court on April 1, 2010, that it is available for viewing and downloading from the ECF system, and that the counsel of record listed below will receive notice via the ECF system:

Max Wistow, Esq. #0330
mw@wistbar.com

Stephen P. Sheehan, Esq. #4030
sps@wistbar.com

          */s/ Marc DeSisto*
          Marc DeSisto

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NOELLE FARRY, et al,
        *Plaintiff,*
vs.

CITY OF PAWTUCKET, et al
        *Defendants.*

C.A. No. 08-325S

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE

I.    Introduction

Defendants hereby move in limine to exclude certain testimony from trial in the above captioned matter. Defendants specifically seek an Order in Limine excluding the following evidence:

- Testimony and evidence relating to Officer Wallace Martin's personal stationery bearing a drawing of a sunglass-wearing Western-style sheriff drawing his gun with the caption "The Lawman";
- Testimony and evidence relating to Officer Martin's former personal email address: cowboycountry127@yahoo.com.
- Testimony and evidence indicating that Officer Martin described his home address as "Cowboy Country;"
- Evidence that Officer Martin allegedly lied to Pawtucket Police Department's Division of Internal Affairs during the investigation into his alleged abuse of sick leave;

Defendants submits that such evidence, in addition to lacking probative value, is nevertheless overly prejudicial such to warrant its exclusion at trial.

Defendants further seek an order limiting the introduction of evidence regarding the investigation into Officer Martin's alleged misuse of sick leave along with his report of stress and fatigue to the Internal Affairs Division. More specifically Defendants submit that while such claimed stress may be admissible as to the claims of lack of supervision against the municipality, it is inadmissible as to the claims against Officer

Martin. Defendants thus request an Order finding that such evidence may not be used by plaintiff to prove its claims against Officer Martin.

II.     Argument

**A. The limited probative value of evidence relating to use of "Lawman" and "Cowboy Country" are substantially outweighed by their prejudicial impact**

As evidenced by Plaintiff's preliminary expert report, plaintiff proposes using the fact that Defendant Wallace Martin's personal stationery bore the caption "The Lawman" under a picture of a sheriff with sunglasses drawing his gun, to support her claim against the City. Plaintiff's expert also refers to the fact that Officer Martin's former address was called "cowboy country" and his email address included the same phrase to support his opinion regarding the supervisory liability of the municipal defendant. Plaintiff's expert proffers that use of certain nicknames, purportedly such as "lawman" and "cowboy," may be warning signs to supervisory personnel about potential behavior, performance or attitude problems. Plaintiff thus, presumptively, will attempt to introduce such evidence in support of her claim that the City failed to supervise Officer Martin by failing to take action or investigate his use of these monikers and/or nicknames. Defendants hereby move in limine to preclude the introduction of such evidence. Defendants first submit the proposed evidence is not probative of the City's liability primarily because, beyond the limited references relied on by plaintiff, it has not been shown to be a moniker or nickname based on the officer's actions nor is there sufficient evidence of the City's knowledge of the nickname. In addition, even if there were any probative value to the introduction of the moniker, such limited value is substantially outweighed by the prejudicial impact.

1. THE LAWMAN NICKNAME AND "COWBOY COUNTRY" REFERENCE ARE NOT PROBATIVE OF ANY ISSUE BEFORE THE JURY

In the first instance, plaintiff relies upon letterhead of Officer Martin sent to the police department in August 2006 to support the claim that use of the nickname "lawman" should have put the City on notice as to the need for additional supervision. Plaintiff also proposes relying upon the fact that Officer Martin's former residence was named "Cowboy Country" and the fact that his former email address contained this term. However, in addition to the questionable basis to support a finding that the supervisors or City had knowledge of this nickname and "cowboy" reference, there is no probative value to admitting such evidence at trial.

In the first instance, plaintiff relies solely upon a single letter, sent over a year and half before the shooting incident, to support the claim that City was on notice as to possible behavioral problems with Officer Martin because of his nickname "the Lawman." However, other than this one letter, there is absolutely no evidence demonstrating knowledge within the department or, for that matter by his supervisors, as to the use of this supposed nickname. This one letterhead showing the "lawman" moniker is simply insufficient to demonstrate knowledge by the department of the perceived use of this nickname. This is supported by the fact that this letter was not addressed to anyone in particular but was simply addressed "to whom it may concern," with the stated intent of being placed in his personnel folder. *See Tab 40 in Support of Plaintiff's Objection to Defendants' Motion for Partial Summary Judgment.* Plaintiff can present no evidence or testimony demonstrating knowledge by the supervisory personnel that Officer Martin used this moniker or nickname. The existence of a letter with a one

(1) inch picture at the top is simply insufficient to support a finding that the City had notice of the supposed nickname.

The same holds true for the use of term "Cowboy Country" as part of Officer Martin's mailing address and email address. Although this address appears throughout plaintiff's personnel file, there is no evidence showing that supervisory personnel were aware of this moniker or during which timeframe he used it.

Further undermining the probative value of these monikers and even more basic is the origin of the letterhead and address name. "Lawman" was initially the name given to Officer Martin's truck when he was in high school. According to Officer Martin's uncontradicted sworn statement, when he was in high school he and his friends had cars and trucks that they named and decorated as hot-rod type vehicles. *Defendant Wallace H. Martin's Supplemental Response To Plaintiff's Third Set Of Interrogatories, Response # 1 & 2.* Because Officer Martin's father had been an officer for over 40 years, and was well-known in Town, Officer Martin's truck was given the name "Lawman." After he bought a new truck in 2003, Officer Martin began taking his new truck, also called "Lawman," to car and truck shows. *Id.* In association with these car and truck shows, Officer Martin created the letterhead to use in listing the truck's features and distribute at the car shows. *Id.*

The origin of "Cowboy Country" is likewise as innocent and emanates from Officer Martin's parents. More specifically, the testimony will show that "Cowboy Country" home was not owned by Officer Martin. Rather, "Cowboy Country" is actually the name of Officer Martin's parent's house. In the early 1970s, Mr. and Mrs. Martin built their house on an estate that had been in existence since the 1600s. Since the 1970s,

the house has been known as "Cowboy Country". The evidence will demonstrate that Officer Martin had no input or participation in the naming of his parent's residence. Because plaintiff was still living with his parents at the time he was hired by Pawtucket, he used his parent's address --"Cowboy Country". He has since bought his own place and moved out of his parent's home. His new residence does not have any reference to his parent's "Cowboy Country" title.

The email address bearing the reference to "cowboy country" likewise originates from his family rather than Officer Martin himself. The testimony will specifically reveal that while he was living at home, he used the family email account. This account allowed emails to be sent to single family email address with the option of forwarding the message to the individual family members. Once again, Officer Martin relied on his parents for the setting up and naming of this account. Since leaving his parent's house, Officer Martin has established his own email account that does not bear the name "cowboy country."

The origin of these monikers is important because plaintiff proposes using them to demonstrate notice of the propensity of Officer Martin to have behavioral issues. As identified in their expert's preliminary report, plaintiff's expert opines that certain nicknames can be an indicator of an officer's problem areas. Although in the preliminary report the expert does not express an opinion as to what problems "lawman" or "cowboy country" are indicative of, he opines that other nicknames such as "Dirty Harry " and "Mad Dog" could be indicators of an officer willing to cut corners. However, if the nickname emanates from a parent's profession, preference and/or reputation and is totally

unrelated to the officer's actions, it can hardly be probative of possible problems or issues with this particular officer.

The First Circuit itself has concluded that nicknames alone, without connection to similar circumstances at issue, are not probative of the municipality's supervisory liability for the unconstitutional acts of an officer.  In *Bennett v. Wainwright*, *548 F.3d 155, 178 (1st Cir. Me. 2008)* the First Circuit affirmed the entry of summary judgment in favor of the municipal defendants on plaintiff's § 1983 claim for failure to train and supervise.  In that case, police shot and killed a mentally ill man who had opened fire on the police when they came to his home.  Plaintiff sought to recover against, *inter alia,* the supervisory officer for the officer's alleged failure to properly train and supervise the officers involved in the shooting.  Plaintiff's evidence of failure to train and supervise included the assertion that one defendant officer was known by the nickname "Deputy Death" and had been involved in the previous shooting of a mentally ill person.  *Id.*  The District Court, however, in granting summary judgment in favor of the supervisor, held that there was "no evidence that the "Deputy Death" nickname arose from circumstances sufficiently similar to those involved in this case to have put the [officer's] supervisors on notice that he was creating "ongoing violations" of the constitutional rights of members of the community."  *Estate of Bennett v. Wainwright*, 2007 U.S. Dist. LEXIS 39631 (D. Me. May 30, 2007).  The First Circuit affirmed this holding.  *Bennett,* 548 F.3d at 178 & n. 7.

Likewise, as outline above, in the instant case, there is no evidence to demonstrate that the "lawman" nickname or use of "cowboy country" terminology arose from any activity of Officer Martin himself, let alone any activity that would put the supervisor's

on notice that he was involved in similar circumstances demonstrating he had the propensity to violate individual's constitutional rights.  Thus, even if the information contained in his personnel jacket reflecting the monikers are sufficient to demonstrate notice of the supposed nicknames, the fact that the nicknames were based on the profession, reputation and preference of someone else, defeats any probative value the nickname may have on Officer Martin's potential behavior.  As such, defendants submit that as a matter of law, there is no probative value in the references to "lawman" and "cowboy country" and as such they should be excluded from trial.

        2.    PREJUDICIAL EFFECT SUBSTANTIALLY OUTWEIGHS ANY PROBATIVE VALUE

In addition, even if there were any probative value behind the introduction of the monikers at trial in relation to the claim against the City, the prejudicial effect to Officer Martin, including misleading the jury by the use of supposed character evidence, substantially outweighs that value.  Although not directly on point, it is generally recognized in criminal trials that when a nickname connotes guilt of the underlying criminal charge or places the defendant in a bad light before the jury, the potential for prejudice is obvious and deserving of serious consideration of whether the probative value is substantially outweighed by any danger of unfair prejudice.  *United States v. Farmer*, 583 F.3d 131, 135 (2d Cir. N.Y. 2009) citing Fed. R. Evid. 403.  To allow the introduction of a such a nickname in the face of limited probative value further runs the risk of violating Rule 404(a) prohibition against introducing evidence of person's character for the purpose of proving that the individual acted in conformity with that nickname.  *Id.*

In the instant case, there is no dispute that the monikers are not probative of any claims against Officer Martin. Rather, the introduction of the evidence would be purely in support of the claims against the municipality. However, in light of the expert's proposed testimony that the nicknames were indicative of some potentially bad behavior on the part of Officer Martin, the prejudicial effect, including the inference that he acted in conformity with the bad behavior that the nickname supposedly connotes, substantially outweighs the probative value. Accordingly, defendants hereby move in limine to bar at trial any reference to or the introduction of evidence demonstrating the "Lawman" or "cowboy country" monikers or nicknames.

**B. Evidence that defendant Wallace Martin allegedly lied to Pawtucket Police Department's Internal Affairs during the investigation into his alleged abuse of sick leave should likewise be excluded or, in the alternative limited, at trial**

Plaintiff also proposes introducing evidence that Officer Martin allegedly lied to Pawtucket Police Department's Division of Internal Affairs during the investigation into his alleged abuse of sick leave before the shooting incident. Defendants submit that such evidence should likewise be excluded or, in the alternative, limited at trial.

Plaintiff has specifically proffered that when questioned about his use of sick time, Officer Martin allegedly lied that part of his time was to attend to his fiancée in the hospital, when in fact she was not in the hospital. Defendants note in the first instance that it is undisputed that the City was not aware of the alleged lies told by Officer Martin in response to the investigation into his use of sick time. Because they lacked such

knowledge of the alleged lie, evidence of the same is not admissible as to the City's liability.[1]

Thus, plaintiff would be purely introducing such evidence in support of her claims against Officer Martin. Of course, at an elementary level, such an alleged lie is inadmissible pursuant to Rule 404(b) as a prior bad act. Rule 404(b) in pertinent part states:

> (b)*Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence or mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable.

Rule 404(b) stands for the central principle that evidence of other acts is not admissible to show bad character. *Bonilla v. Yamaha Motors Corp.*, 955 F.2d 150, 154 (1st Cir. 1992). Such evidence is admissible only if it is presented for another purpose such as to show notice, intent, knowledge, identity, etc. While the list delineated in Rule 404(b) is not exhaustive, the proffered evidence must be offered for a relevant purpose other than to show that the person against whom the evidence is offered acted in conformity therewith. *Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron*, 805 F.2d 907 (10th Cir. 1986).

In the instant case, plaintiff would presumptively be seeking to introduce Officer Martin's perceived lie to his employer to challenge Officer Martin's credibility pursuant to Rule 608. Rule 608(b) of the Federal Court Rules of Evidence specifically authorizes

---

[1] In opposition to Defendants' Motion for Partial Summary Judgment, plaintiff claimed that the failure by the police department to discipline Officer Martin for this perceived lie is evidence of municipal liability. However, for all the reasons outlined in Defendants' Reply Memorandum, such a theory of recovery is untenable. This Court has yet to rule on Defendants' Motion for Partial Summary Judgment. Should the Court accept plaintiff's argument, defendants' reserve the right to supplement this argument.

cross-examination of a witness concerning prior acts "if probative of truthfulness or untruthfulness."  However Rule 608(b) prohibits the introduction of extrinsic evidence of specific instances of conduct to attack a witness's "character for truthfulness."

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility. . . , may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness." Fed. R. Evid. 608(b).

In the instant case, defendants submit that while plaintiff may cross-examine Officer Martin on the specific instance as it relates to his truthfulness, plaintiff may not resort to introducing extrinsic evidence of this perceived lie. Rather, pursuant to Rule 608(b), plaintiff is limited to cross-examining Officer Martin on this issue.  Defendants thus seek an Order, in limine, finding that extrinsic evidence of this perceived lie is inadmissible at trial.

      C.    **The evidence regarding Officer Martin's alleged misuse of sick time and report of stress and fatigue to the Internal Affairs Division should be limited to plaintiff's claim against the City**

Defendants also seek an Order in Limine, limiting the introduction of evidence of Officer Martin's alleged misuse of sick time and report of stress and fatigue to the Internal Affairs Division.  Defendants submit that while the evidence may be relevant to the determination of whether the City failed to supervise Officer Martin, it is inadmissible as to plaintiff's § 1983 claim against Officer Martin himself.

In particular, it is well-settled that an "officer's use of deadly force is subject to the reasonableness requirement of the Fourth Amendment. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985).  The test is whether the officer's conduct was "objectively reasonable," *Graham v. Connor*, 490 U.S. 386, 397 (1989), that is, whether the officer has "probable

cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others," *Garner, 471 U.S. at 3."* *Berube v. Conley, 506 F.3d 79, 82-83 (1st Cir. Me. 2007).* Accordingly any subjective element unique to the officer, such as stress, is totally irrelevant to the determination of whether Officer Martin violated plaintiff's constitutional rights. The introduction of this evidence as against Officer Martin would have extreme prejudicial effect, potentially preventing the jury from properly applying the objective standard necessary to determine the constitutional claim against Officer Martin.

Accordingly, defendants hereby seek a order in Limine, limiting the introduction of such evidence of Officer Martin's use of sick time and report of stress solely to the claims against the municipality and exclude it as to the claims against Officer Martin.

Defendants,
By their attorney,

*/s/ Marc DeSisto*
Marc DeSisto      (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax:    (401) 272-9937
Email: marc@desistolaw.com

CERTIFICATION OF SERVICE

I hereby certify that the within document has been electronically filed with the Court on April 1, 2010, that it is available for viewing and downloading from the ECF system, and that the counsel of record listed below will receive notice via the ECF system:

Max Wistow, Esq. #0330
mw@wistbar.com
Stephen P. Sheehan, Esq. #4030
sps@wistbar.com

*/s/ Marc DeSisto*

Marc DeSisto